MAIN, Justice.
Albert Daniels petitions this Court for a writ of mandamus compelling the Barbour Circuit Court to vacate its order severing and staying Daniels's claims against defendants *867 Joseph Morris, Tracy Cary, and Morris, Cary, Andrews, Talmadge & Driggers, LLC ("the Morris firm") (hereinafter Morris, Cary, and the Morris firm are referred to collectively as the "Morris defendants"), and also to compel the circuit court to enter a default judgment. We grant the petition in part and deny it in part.
I. Facts and Procedural History
This lawsuit was filed by Daniels in the Barbour Circuit Court on September 18, 2015, naming Sherrie Ann Johnson ("Johnson") as the defendant; the complaint was amended in 2017 to add the Morris defendants. In his amended complaint, Daniels alleges the following facts:
Johnson and Daniels are the parents of Alquwon Johnson. On June 4, 2011, Alquwon committed suicide while he was an inmate in the Barbour County jail. At the time of his death, Alquwon was unmarried and had no children.
Johnson engaged the Morris firm to pursue a wrongful-death claim related to Alquwon's death. Johnson petitioned the Barbour Probate Court for letters of administration for Alquwon's estate. The petition, which was prepared by the Morris firm, stated that Johnson was Alquwon's only heir. On July 5, 2011, the Barbour Probate Court granted Johnson letters of administration.
On August 8, 2011, Johnson, as the personal representative of Alquwon's estate, filed a wrongful-death action in the Barbour Circuit Court. Johnson was represented by the Morris defendants in the wrongful-death litigation. The case was removed to federal court. In 2015, the case was settled. The Morris defendants distributed the settlement funds to Johnson; none of the proceeds were paid to Daniels.
In May 2017, Daniels telephoned the Morris firm to inquire about retaining the firm to file a wrongful-death suit related to Alquwon's death. After speaking with an employee of the firm, Daniels was told that the firm had a conflict of interest and could not represent him. He later received a letter from Cary stating that "a lawsuit brought on your behalf would not be economically feasible given the nature, facts and circumstances surrounding your case." The Morris firm did not inform Daniels about the prior lawsuit and that it had settled the case and paid the settlement proceeds to Johnson.
On September 18, 2015, Daniels filed the underlying action against Johnson. The suit alleged that, as Alquwon's father, Daniels was entitled to 50% of the net settlement proceeds but that Johnson had wrongfully retained the entire amount. He asserted against Johnson claims of breach of fiduciary duty and conversion.
On August 29, 2017, Daniels filed his first amended complaint, adding as defendants the Morris defendants and asserting two claims against them. Count three of Daniels's amended complaint asserted a claim of fraud against the Morris defendants. That claim alleged, in part:
"57. Although The Morris Law Firm had actual knowledge that [Daniels] was the father of [Alquwon], The Morris Firm failed:
"a. To obtain a full and accurate list of heirs at law of [Alquwon];
"b. To list [Daniels] as an heir of [Alquwon];
"c. To notify [Daniels] of the opening of the estate;
"d. To notify [Daniels] that at least one lawsuit had been filed on [Daniels]'s son['s] behalf;
"e. To inform [Daniels] that a settlement had been reached regarding the death of [Alquwon];
*868 "f. To apportion settlement proceeds for the § 1983 claims and for the wrongful death claims of [Alquwon];
"g. To interplead one-half of the wrongful death recovery into the Barbour County Circuit Court as recovery for the § 1983 claims for the wrongful death [of Alquwon].
"58. When [Daniels] contacted The Morris Firm to see if they would represent [Daniels] in a wrongful death action on behalf of [Alquwon], The Morris Law Firm:
"a. Suppressed the fact that they had opened the Estate on behalf of Alquwon Johnson;
"b. Suppressed the fact that they had filed a State lawsuit for wrongful death and under § 1983 for civil rights violations;
"c. Suppressed the fact that a settlement had been reached and funds had been paid;
"d. Fraudulently represented that the firm did not believe a lawsuit for [Daniels] was 'economically feasible' although The Morris Law Firm [represented] Sherrie Johnson in the exact same matter for the death of [Alquwon]."
Daniels also alleged that the Morris defendants intentionally misspelled Alquwon's and Johnson's names in the estate-administration documents filed in the probate court to hinder attempts to discover that an estate had been opened.
In count six of Daniels's amended complaint-styled as a "third-party beneficiary" claim-he contends that the Morris defendants "had a duty to ascertain the known heirs of Alquwon" but that they "negligently and/or fraudulently failed to identify [Daniels] as an heir at law of [Alquwon]."
On September 12, 2017, Daniels filed a second amended complaint in which he added a count seven, a claim of breach of fiduciary duty, against the Morris defendants. That claim asserted that, "as a result of the attorney-client relationship between [Johnson] and The Morris Law Firm, and pursuant to the laws of Alabama Wrongful Death Act and Alabama Intestate Succession law, [Daniels], as a known heir of [Alquwon], was in a fiduciary relationship with The Morris Law Firm."
On October 10, 2017, the Morris defendants filed a motion to sever the claims against them from the claims against Johnson and to stay the proceedings on the ground that a provision of the Alabama Legal Services Liability Act, § 6-5-571 et seq., Ala. Code 1975 ("the ALSLA"), specifically, § 6-5-579, Ala. Code 1975, requires such a severance of claims. Daniels filed an opposition to the motion to stay and to sever, arguing that the ALSLA did not apply to his claims.
On November 3, 2017, Daniels filed a motion for a default judgment, arguing that it had been more than 30 days since the Morris defendants had been served with the summons and complaint and that they had not filed a responsive pleading.
On December 13, 2017, the circuit court entered an order denying Daniels's motion for a default judgment, bifurcating Daniels's claims against the Morris defendants from those against Johnson, and staying the claims against the Morris defendants, including all discovery, pending the resolution of Daniels's claims against Johnson.[1] This petition followed.
*869 II. Standard of Review
" 'The writ of mandamus is an extraordinary writ that applies "where a party seeks emergency and immediate appellate review of an order that is otherwise interlocutory and not appealable." Rule 21(e)(4), Ala. R. App. P. In order for this Court to issue a writ of mandamus, the petitioner must show: "(1) a clear legal right ... to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court." Ex parte Bloodsaw, 648 So.2d 553 (Ala. 1994).' "
Ex parte Alfa Life Ins. Corp., 923 So.2d 272, 273 (Ala. 2005) (quoting Ex parte Turpin Vise Ins. Agency, Inc., 705 So.2d 368, 369 (Ala. 1997) ).
III. Analysis
Daniels first contends that the circuit court erred in applying the ALSLA to bifurcate his claims against the Morris defendants from his claims against Johnson and to stay the action as to his claims against the Morris defendants. Specifically, Daniels contends that the circuit court incorrectly applied § 6-5-579(a) to his claims against the Morris defendants because (1) the Morris defendants did not render legal services to him, and, thus, he says, the ALSLA is not applicable, and (2) his claims against Johnson are not an "underlying action" as defined by the ALSLA. We agree.
In Cunningham v. Langston, Frazer, Sweet & Freese, P.A., 727 So.2d 800 (Ala. 1999), this Court reviewed the language and purpose of the ALSLA and concluded that "the ALSLA does not apply to an action filed against a 'legal service provider' by someone whose claim does not arise out of the receipt of legal services." 727 So.2d at 804. Stated another way, "the ALSLA applies only to lawsuits based on the relationship between 'legal service providers' and those who have received legal services." 727 So.2d at 805. See also Brackin v. Trimmier Law Firm, 897 So.2d 207, 229 (Ala. 2004) ("An attorney-client relationship is an essential element of a claim under the [ALSLA]."); Robinson v. Benton, 842 So.2d 631 (Ala. 2002). Here, it is undisputed that the Morris defendants did not provide legal services to Daniels. Accordingly, his claims against the Morris defendants are not governed by the ALSLA.
Nor does the specific provision of the ALSLA relied upon by the Morris defendants and the circuit court, § 6-5-579(a), appear to apply in this situation. Section 6-5-579(a) provides:
"If the liability to damages of a legal services provider is dependent in whole or in part upon the resolution of a underlying action, the outcome of which is either in doubt or could have been affected by the alleged breach of the legal services provider standards of care, then, in that event, the court shall upon the motion of the legal services provider, order the severance of the underlying action for separate trial."
The ALSLA defines the term "underlying action" as
"the legal matter concerning the handling of which it is alleged that the legal services provider breached the applicable standard of care. The term is applicable in legal service liability actions in which the legal service provider's liability *870 is dependent in part upon or derived from the legal service provider's acts or omissions concerning the handling of the underlying action."
§ 6-5-572(5), Ala. Code 1975.
Section 6-5-579(a) appears to be a recognition that, under Alabama law, " '[i]n a legal malpractice case, the plaintiff must show that but for the defendant's negligence he would have recovered on the underlying cause of action ... or must offer proof that the outcome of the case would have been different.' " Independent Stave Co. v. Bell, Richardson & Sparkman, P.A., 678 So.2d 770, 772 (Ala. 1996) (quoting McDuffie v. Brinkley, Ford, Chestnut & Aldridge, 576 So.2d 198, 199-200 (Ala. 1991) ). In this case, Daniels's claims against the Morris defendants are not joined to an "underlying action." Accordingly, the provision § 6-5-579(a) requiring severance for separate trials is not applicable.
Further, we note that, other than the mistaken claim that § 6-5-579(a) requires it, neither the Morris defendants nor the circuit court has provided any justification for ordering a separate trial against the Morris defendants. Although we have recognized that a trial court has broad discretion to "shape the order of trial" and to order severance or separate trials, Ex parte Humana Medical Corp., 597 So.2d 670, (Ala. 1992), that discretion is not unbounded. Generally, an order for severance or separate trials must be in furtherance of "expedition and economy" or to avoid prejudice. See Rule 42, Ala. R. Civ. P.; Fox v. Hollar Co., 576 So.2d 223, 225 (Ala. 1991). In this case, there is no suggestion that judicial economy or avoidance of prejudice support bifurcating Daniels's claims against the Morris defendants from those against Johnson and staying the claims against the Morris defendants. Accordingly, we conclude that the order doing so is due to be vacated.
We emphasize that this opinion is not a statement as to the merits or viability of Daniels's claims against the Morris defendants; it holds only that the ALSLA does not require that the adjudication of those claims await separate resolution of Daniels's claims against Johnson.
Finally, as to Daniels's contention that he is entitled to a default judgment against the Morris defendants, we deny the petition. This Court has recognized that a movant is not entitled to a default judgment as a matter of right, and "it is well settled that an entry of a default judgment under Rule 55(b)(2), Ala. R. Civ. P., is a matter entrusted to the sound discretion of the trial court." City of Gulf Shores v. Harbert Int'l, 608 So.2d 348, 357-58 (Ala. 1992). Based on the information before us, Daniels has not established a clear legal right to a default judgment against the Morris defendants.
IV. Conclusion
We conclude that the ALSLA does not require that Daniels's claims against the Morris defendants be bifurcated and stayed pending resolution of his claims against Johnson. Accordingly, the circuit court is directed to vacate its order bifurcating and staying Daniels's claims against the Morris defendants. Daniels, however, has not established a clear legal right to a default judgment against the Morris defendants. Thus, as to the request for a default judgment, the petition is denied.
PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.
Stuart, C.J., and Bolin, Parker, Wise, Bryan, Sellers, and Mendheim, JJ., concur.
Shaw, J., concurs specially.
SHAW, Justice (concurring specially).
*871 A trial court has discretion in deciding whether to separate claims and parties for trial: "In short, Rule 42 [, Ala. R. Civ. P.,] authorizes the trial court to bifurcate trials in furtherance of convenience or to avoid prejudice or when separate trials will be conducive to expedition and economy." Certain Underwriters at Lloyd's, London v. Southern Natural Gas Co., 142 So.3d 436, 452 (Ala. 2013). But, although the Committee Comments on the 1973 Adoption of Rule 42 indicate that Rule 42"gives the trial court a virtually unlimited freedom to order separate trials of claims, issues, or parties, as may seem dictated by convenience and the desire to avoid prejudice," they also state that
"separate trials are to be ordered only where needed 'in furtherance of convenience or to avoid prejudice.' Separate trials are not to be granted merely because the matters involved would have been tried separately before the rules were adopted, or because some of the parties might prefer separate trials. It is the interest of efficient judicial administration which is to be considered, rather than the wishes of the parties."
It does not appear to me that the circuit court ordered separate trials on the basis of convenience, to avoid prejudice, or for purposes of economy, one of which factors must exist for the trial court to have "virtually unlimited freedom to order separate trials." Specifically, arguments regarding such factors were not made to the circuit court in the motion to "sever and stay." Further, the circuit court's order does not evidence that such considerations were the basis of its decision. Instead, it was argued that Ala. Code 1975, § 6-5-579(a), essentially required a severance/separation of claims and parties in this case-that there was no discretion for the circuit court to exercise. Because, as the main opinion shows, that premise was incorrect, the only basis of the motion to "sever and stay"-and presumably the circuit court's decision-was without merit.
In this petition for the writ of mandamus, "[t]he burden of establishing a clear legal right to the relief sought rests with the petitioner." Ex parte Metropolitan Prop. & Cas. Ins. Co., 974 So.2d 967, 972 (Ala. 2007). The respondents thus have no burden to provide justification for the circuit court's actions. That said, if the circuit court exercised its discretion to serve the permissible purposes for a separation of the parties and claims identified above, such purposes are simply not evidenced in the materials before us. See Ex parte Duncan Constr. Co., 460 So.2d 852, 854 (Ala. 1984) ("We find no factual or legal grounds supporting the trial court's conclusions. We are constrained, therefore, to hold that the court's severance of all third-party claims ... amounts to an abuse of that court's discretion.").

The Morris defendants' motion requested that the claims be "severed," and the parties use the term "severance" to describe the order. The circuit court's order, however, states only that the claims are "bifurcated"; there is no indication that the circuit court intended that the claims against the Morris defendants be made an independent action. Accordingly, we treat the order as an order separating trials under Rule 42(b), Ala. R. Civ. P., rather than a true severance under Rule 21, Ala. R. Civ. P.